## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT LEE BRAUN, *et al.*, | : | |
| | : | Case No. 2:19-cv-05050 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| COULTER VENTURES, LLC DBA ROGUE | : | |
| FITNESS, *et al.*, | : | Magistrate Judge Kimberly J. |
| | : | Jolson |
| Defendants. | : | |

---

### JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

---

Named Plaintiffs Scott Lee Braun, Robert E. Hessler, Allen D. Bishop III, Marcellus Murray, and Larry Benn, on behalf of themselves and all other similarly situated individuals ("Plaintiffs"), and Defendants Coulter Ventures LLC, dba Rogue Fitness, William "Bill" Henniger, and Caity Matter Henniger ("Defendants") (Plaintiffs and Defendants are collectively referred to as the "Parties") hereby respectfully move this Court to review the Parties' Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached hereto as **Exhibit A** ("**Ex. A**"), and for an Order approving the Settlement Agreement as fair and reasonable. In support of this Motion, the Parties state as follows:

1.      Plaintiffs commenced this action against Defendants, alleging in part that Defendants failed to pay Plaintiffs' overtime wages due under the Fair Labor Standards Act ("FLSA") and related state-law statutes.

2.      Defendants have denied liability and wrongdoing of any kind.

3.      In an effort to reach a compromise and to avoid the expense and burden of continued litigation, the Parties have reached a settlement of all federal and Ohio wage claims

asserted in the pending action. The terms of the settlement are embodied in the Settlement Agreement. *See* **Ex. A**.

4.      Plaintiffs' and Defendants' undersigned counsel believe that the proposed Settlement Agreement is fair and reasonable.

5.      The proposed Settlement Agreement is contingent upon the Court's review and approval of it, as well as the Court's issuance of an Order approving the Settlement Agreement as fair and reasonable.

6.      The Parties agree that bona fide disputes exist regarding Plaintiffs' wage-and-hour claims, including the number of hours worked and computation of wages.

7.      The Parties stipulate and agree that the proposed Settlement Agreement: (a) is not the product of fraud or collusion; (b) is in resolution of complex and expensive litigation that is likely to be of a significant duration; (c) accounts for the potential success on the merits by Plaintiffs, as well as the defenses of the Defendants; (d) is reasonable and fair in the opinion of the Parties' counsel; and (e) is in the public's best interest to promote the early resolution of contested claims in litigation.

8.      The Parties, pursuant to Fed. Civ. R. 41(a)(1)(ii) and based upon the attached Settlement Agreement, hereby stipulate to the dismissal of this case with prejudice. The Parties request that this Court retain jurisdiction to enforce the terms of the proposed Settlement Agreement.

WHEREFORE, for the foregoing reasons, the parties request that the Court review the proposed Settlement Agreement (*see* **Ex. A**) and issue an Order approving it as fair and reasonable, and that this case be stipulated as dismissed with prejudice.

The Memorandum in Support of this Motion is incorporated herein.

Dated: May 19, 2023

Respectfully submitted,

*/s/Melissa S. Kelly*
Melissa Z. Kelly (0077441)
**TUCKER ELLIS, LLP**
950 Main Avenue
Suite 1100
Cleveland, OH 44113
Telephone: (216) 592-5000
Facsimile: (216) 592-5009
melissa.kelly@tuckerellis.com

*/s/Drew H. Campbell*
Michael A. Roberts (0047129)
Drew H. Campbell (0047197)
Alexandra M. Berry (0098176)
**BRICKER GRAYDON, LLP**
100 South Third Street
Columbus, Ohio 43215
Telephone: (614) 227-2319
Facsimile: (614) 227-2390
mroberts@brickergraydon.com
dcampbell@brickergraydon.com
aberry@brickergraydon.com

*Attorneys for Defendants*

*/s/ Robert E. DeRose*
Robert E. DeRose (0055214)
Jacob A. Mikalov (0102121)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com
jmikalov@barkanmeizlish.com

*/s/John S. Marshall*
John S. Marshall (0015160)
Helen M. Robinson (0097070)
Madeline J. Rettig (0098816)
**MARSHALL, FORMAN AND SCHLEIN, LLC**
250 Civic Center Drive, Suite 480
Columbus, Ohio 43215
Telephone: (614) 463-9790
Facsimile: (614) 744-2300
jmarshall@marshallforman.com
hrobinson@marshallforman.com
mrettig@marshallforman.com

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

*Attorneys for Plaintiffs*

**<u>MEMORANDUM IN SUPPORT OF THE JOINT</u>**
**<u>MOTION FOR APPROVAL OF SETTLEMENT</u>**

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND................................................ 1

SUMMARY OF SETTLEMENT TERMS............................................................ 3

DISMISSING WITH PREJUDICE THE OHIO WAGE ACT CLAIMS BROUGHT UNDER FED. R. CIV. P. 23 ................................................................................ 6

THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT ................................................................................................. 9

    A.  THE PROPOSED SETTLEMENT IS THE PRODUCT OF CONTESTED LITIGATION................................................................................... 11

    B.  THE PROPOSED SETTLEMENT REFLECTS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE BETWEEN THE PARTIES.............. 11

        1.  A BONA FIDE DISPUTE BETWEEN THE PARTIES EXISTED OVER LIABILITY ................................................................................ 11

        2.  THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE.................. 13

        3.  THERE IS NO EVIDENCE OF FRAUD OR COLLUSION ........................... 14

        4.  THE COMPLEXITY, EXPENSE AND LIKELY DURATION OF THE LITIGATION............................................................................... 14

        5.  STAGE OF PROCEEDINGS ............................................................ 15

        6.  THE LIKELIHOOD OF SUCCESS ON THE MERITS .................................... 15

        7.  THE OPINION OF PLAINTIFFS AND PLAINTIFFS' COUNSEL ................. 17

        8.  THE REACTION OF ABSENT CLASS MEMBERS ........................................ 17

        9.  PUBLIC INTEREST IN THE SETTLEMENT................................................. 18

    C.  THE REPRESENTATIVE PLAINTIFFS' SERVICE PAYMENTS AND THE SERVICE PAYMENTS FOR THOSE WHO HAD THEIR DEPOSITIONS TAKEN SHOULD BE APPROVED ........................................................................... 18

PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES SHOULD
BE APPROVED ........................................................................................................................19

    A.  VALUE OF THE BENEFIT RENDERED TO THE ELIGIBLE SETTLEMENT
        CLASS MEMBERS.....................................................................................................22

    B.  VALUE OF THE SERVICES ON AN HOURLY BASIS............................................22

    C.  WHETHER THE SERVICES WERE UNDERTAKEN ON A CONTINGENT FEE
        BASIS .......................................................................................................................23

    D.  SOCIETY'S STAKE IN REWARDING ATTORNEYS WHO PRODUCE SUCH
        BENEFITS TO MAINTAIN AN INCENTIVE TO OTHERS ....................................23

    E.  THE COMPLEXITY OF THE LITIGATION ............................................................24

    F.  THE PROFESSIONAL SKILL AND STANDING OF COUNSEL INVOLVED ON
        BOTH SIDES..............................................................................................................25

    G.  LITIGATION COSTS .................................................................................................25

CONCLUSION...........................................................................................................................25

### *TABLE OF AUTHORITIES*

**Cases**          **Page(s)**

*American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554 (1974) ...................................8

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)...................................................................9

*Casey v. Medcursor, Inc.*, No. 1:21-CV-00711-DAD-SAB, 2021 WL 4751378, at *1-2 (E.D. Cal. Oct. 12, 2021)...........................................................................................................................8

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018).........................................................8

*Combs v. TruGreen Ltd. P'ship*, No. 1:08-CV-489, 2010 WL 1163094, at *5 (S.D. Ohio Sept. 2, 2010) ...............................................................................................................................................13

*Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)..............................................7

*Crawford v. Lexington-Fayette Urban Cnty. Gov't*, Civil Action No. 06299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) ....................................................................................10

*Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983) ..............................................8

*Derrick v. Glen Mills Sch.*, Civil Action No. 19-1541, 2023 WL 2058683, at *2 (E.D. Pa. Feb. 17, 2023).............................................................................................................7

*Dewald v. Time Warner Cable Inc.*, Nos. 16-CV-1129, 17-CV-00631, 2021 U.S. Dist. LEXIS 32459, at *18 (S.D. Ohio Feb. 16, 2021) ..............................................................................23-24

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010)..................................................................................................................10, 14

*Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 762 (6th Cir. 2005)........................8

*Does 1-2 v. Déja' Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019)..........................................16

*Fegley v. Higgins*, 19 F.3d 1126, 1134-43 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994) ....................................................................................... 19-20

*Ford v. Carnegie Mgmt. Servs., Inc.*, Civil Action No. 2:16-CV-18, 2017 WL 4390294, at *2 (S.D. Ohio Oct. 3, 2017) ..............................................................................................................14

*Foster v. Residential Programs*, Inc.,  No. 2:19-CV-2358, 2021 U.S. Dist. LEXIS 30963, at *8 (S.D. Ohio Feb. 18, 2021)................................................................................................ 11, 24-25

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)........................ 20-21

*Gentrup v. Renovo Servs., LLC*, No. 1:07-CV-430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) ...................................................................................................................................18

*Graybill v. Petta Enters., LLC*, No. 2:17-cv-418, 2018 WL 4573289
(S.D. Ohio Sept. 25, 2018)..................................................................................................9, 17

*Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ....................................................10

*Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *5
(S.D. Ohio Sept. 20, 2019)................................................................................................23

*Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)........................................................................17

*Kritzer v. Safelite Solutions, LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *5-8 (S.D. Ohio
May 30, 2012) ......................................................................................... 10, 20-22, 24

*Kunkle v. Q-Mark, Inc.*, No. 3:13-CV-82, 2013 WL 6913250, at *1
(S.D. Ohio Dec. 30, 2013) ...............................................................................................13

*Ky. Tax Bill Servicing, Inc. v. City of Covington*, Civil Action No. 19-188-DLB-CJS, 2021 WL
5862559, at *1 (E.D. Ky. Aug. 30, 2021)..........................................................................8

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)............... 7, 9-10

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) ..................................................21

*Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. LEXIS 11019, at *16-17
(S.D. Ohio Jan. 18, 2019) ..................................................................................................19

*Murton v. MeasureComp, LLC*, No. 1:07Cv3127, 2009 U.S. Dist. LEXIS 144222, at *17 (N.D.
Ohio Aug. 10, 2009) ..........................................................................................................17

*Neal v. Hallsons of Lebanon, Inc.*, No. 1:20-CV-00672, 2022 U.S. Dist. LEXIS 42210 (S.D.
Ohio Feb. 28, 2022) ..............................................................................................15, 19, 24

*O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at *8
(W.D. Tenn. Aug. 4, 2020) ..................................................................................................7

*Osman v. Grube, Inc.*, No. 3:16-CV-00802-JHH, 2018 U.S. Dist. LEXIS 78222, at *4 (N.D.
Ohio May 4, 2018) ......................................................................................................... 18-19

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ........................................................21

*Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) ........ 19-21

*Rui He v. Rom*, 751 Fed. App'x 664, 673 (6th Cir. 2018) ...........................................................20

*Schneider v. Goodyear Tire & Rubber Co.*, 5:13CV2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014) ......................................................................................................................10

*Shanahan v. KeyBank*, 2021 Dist. LEXIS 50516, at *14 (N.D. Ohio Mar. 16, 2021) .................22

*Simmons v. Mathis Tire & Auto Serv.*, No. 13-2875-STA-tmp, 2015 U.S. Dist. LEXIS 114008, at *2 (W.D. Tenn. Aug. 20, 2015) ...............................................................................................11

*Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 U.S. Dist. LEXIS 179622, at *4 (S.D. Ohio Sept. 29, 2020) ...................................................................................................................12

*Swickheimer v. Best Courier, Inc.*, No. 2:19-CV-3706, 2021 U.S. Dist. LEXIS 242757, at *5 (S.D. Ohio Dec. 21, 2021) .........................................................................................................15

*Swigart v. Fifth Third Bank*, No. 1:11-CV-00088, 2014 WL 12654902, at *1 (S.D. Ohio Feb. 19, 2014) ..........................................................................................................................................10

*UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ............................................13

*Williams v. Vukovich*, 720 F.2d 909. 922-23 (6th Cir. 1983) .....................................................17

**Statutes**                                                                                              **Page(s)**

29 U.S.C. §§ 201, *et seq.* .................................................................................................................1

29 U.S.C. § 216(b) ....................................................................................................................17, 19

Fed. R. Civ. P. 23 ..............................................................................................................................6

Fed. R. Civ. P. 23(e) .........................................................................................................................6

Fed. R. Civ. P. 41(a)(1)(ii) ...............................................................................................................7

Fed. R. Civ. P. 41(a)(2) ....................................................................................................................7

O.R.C. § 4111.01 ..............................................................................................................................1

O.R.C. § 4111.03 ..............................................................................................................................1

O.R.C. § 4111.10 ..............................................................................................................................1

O.R.C. § 4113.15 ..............................................................................................................................1

## I.    <u>INTRODUCTION</u>

The Parties have reached a Settlement Agreement with respect to the above-captioned lawsuit. The settlement was achieved through extensive negotiation and only after three (3) separate mediations, the final two days of mediation with former United States Magistrate Judge Terrence P, Kemp serving as mediator. The settlement is memorialized in the Settlement Agreement and Release ("Settlement" or "Agreement"), attached as **Ex. A**. The Agreement sets forth, among other terms, the amount to be paid to Plaintiffs and their Counsel by Defendants. Under the Agreement, the Parties agreed to releases of claims and dismissal of this action with prejudice upon approval of this Motion by the Court and the Parties' full performance of their obligations set forth in the Agreement.

## II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff Scott Lee Braun filed a class and collective action against Defendant Coulter Ventures, LLC, *dba* Rogue Fitness on November 18, 2019. (ECF No. 1). Subsequently, on December 11, 2019, Plaintiff Scott Lee Braun filed his First Amended Collective and Class Action Complaint including, among other things, William "Bill" Henniger and Caity Matter Henniger as named Defendants alongside Defendant Coulter Ventures, LLC, *dba* Rogue Fitness (collectively, "Defendants"). (ECF No. 14). Then, on April 17, 2020, Plaintiffs Scott Lee Braun, Robert E. Hessler, Allen D. Bishop III, Marcellus Murray, and Larry Benn, on behalf of themselves and all similarly situated individuals ("Plaintiffs"), filed their Second Amended Collective and Class Action Complaint (the "Operative Complaint") (Plaintiffs and Defendants will be collectively referred to as the "Parties"). (ECF No. 44). The Operative Complaint asserts violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Wage Fair Standards Act (the "Ohio Wage Act"), O.R.C. §§ 4111.01, 4111.03 and 4111.10, and the Ohio

Prompt Pay Act (the "OPPA"). (*Id.*). Defendants vehemently denied Plaintiffs' claims and asserted multiple affirmative defenses. (ECF No. 46).

Plaintiffs filed a motion for conditional certification of the FLSA collective on November 2, 2020, (ECF No. 63), and the Court granted their motion on July 21, 2021 (ECF No. 96). The Parties put forth competing notice proposals (ECF Nos. 97, 98), which culminated in the Court ordering that the notice forms state an opt-in period of 60 days, among other ordered terms. (ECF No. 107 at PAGEID 1039). After notice had been sent to putative members of the FLSA collective, one hundred fifteen (115) opted-into the lawsuit at the close of the notice period. Subsequently, fifteen (14) withdrew their consent forms for various reasons (i.e., they did not wish to participate in this case, they mistakenly received notice, etc.) and one was determined to never have worked at Rogue. The "Current Opt-In Plaintiffs" including the Named Plaintiffs and those who joined the lawsuit prior to sending notice of the collective action, is ninety-nine (99) members.

On August 30, 2022, the Parties attended a mediation at the law offices of Vorys, Sater, Seymour & Pease LLP before mediator Elizabeth A. Callan, Esq. The Parties were unable to come to a resolution of their competing claims and litigation continued. As this case progressed, the likelihood of subsequent mediations arose only after further contested litigation—discovery disputes and briefing proliferated the lawsuit. Two (2) more mediations were held before Magistrate Judge Terrence P. Kemp at the law offices of Barkan Meizlish DeRose Cox, LLP, one on April 20, 2023 and the other on May 10, 2023. Through these latter mediations, the Parties were able to enter into a comprehensive, written settlement agreement that resolves the legal claims brought as a collective by Plaintiffs against Defendants. The Settlement Agreement, if approved, will resolve these claims. *See*, Joint Stipulation of Settlement and Release, attached as **Exhibit A** ("**Ex. A**.")

III.   **SUMMARY OF SETTLEMENT TERMS**

The proposed Settlement obligates the Parties to abide by the following terms:

1.   The Settlement will be an FLSA Collective Action settlement.

2.   The Collective Recovery Period is November 19, 2016 through March 31, 2021.

3.   Notice of Settlement will be sent to: (i) the six hundred sixty five (665) Rogue employees who received the original conditional collective class notice in 2021 and did not join the case, exclusive of those Opt-in plaintiffs that have been withdrawn or are not employees of Rogue ("Original Non-Opt-In Plaintiffs"); and (ii) the fifty-five (55) Rogue employees who were excluded from the original conditional collective class notice  (the Original Non-Opt-In Plaintiffs and the fifty-five excluded employees will be collectively referred to as the "Settlement Notice Members"). There are seven hundred twenty (720) Settlement Notice Members. Those eligible to participate in the Settlement will be the ninety-nine (99) Current Opt-in Plaintiffs plus those Settlement Notice Members who timely opt into the Settlement.

4.   The Current Opt-in Plaintiffs plus any Settlement Notice Members who timely return a Notice to Join the Settlement to the Third-Party Administrator, ILYM Group, Inc., will be referred to as the "Eligible Settlement Class Members." There are eight hundred and nineteen (819) Eligible Settlement Class Members.

5.   The Settlement Class Members will receive for each day they worked from November 18, 2016, through March 31, 2021 (the "Recovery Period") the actual number of minutes they clocked in before their shift, the number of minutes they were clocked in after the end of their shift, and when data for their lunch shows less than 30 minutes, Defendants will pay the difference ("the Unpaid Wage Award"). For each week that the number of additional minutes causes the Eligible Settlement Class Member to work more than forty (40) hours in a workweek, that Eligible Settlement Class Member will receive one-and-a-half times their regular rate of pay for those

3

minutes.[1] The Unpaid Wage Award is subject to an offset for any minutes Defendants have already paid the Eligible Settlement Class Member beyond their scheduled shift time.[2]

6. The Parties agree to a one hundred percent (100%) Liquidated Damages Award of the Unpaid Wage Award.

7. The Eligible Settlement Class Member Fund for the Settlement Class is $639,353.61. Each Eligible Settlement Class Member will receive a portion of the Eligible Settlement Class Member Fund based on their actual time clocked in and not paid during the Collective Recovery Period. Eligible Settlement Class Member Fund was calculated as follows:

a. The total unpaid back wages for the eight-hundred-nineteen (819) Eligible Settlement Class Members is $938,407.70, which is calculated based on their actual minutes clocked in, but not paid in the Recovery Period, minus any time they were paid for clocking before or after their shift.[3]

b. At one hundred percent (100%) liquidated damages, the amount of back wages and liquidated damages available to Eligible Settlement Class Members equates to $1,876,815.40.

c. The average award per Eligible Settlement Class Member is $2,291.59 ($1,876,815.40 divided by 819).

d. The total unpaid back wages and liquidated damages for the ninety-nine (99) Current Opt-in Plaintiffs is $226,867.41.

e. Applying the Cap on Damages (*see* Paragraph III. 6.), the total for the estimated 180 Settlement Notice Members who timely file Notice is $412,486.20.

---

[1] The settlement will not contemplate any gap time, meaning that if the amount of agreed additional time added to their week does not put a Settlement Class Member over forty (40) hours worked in that workweek, that is not a week in which the Settlement Class Member will recover.

[2] The employer's portion of the payroll tax withholding will be paid from outside of any of the settlement funds. The Unpaid Wage Award will be subject to a Form W-2 and the Liquidated Damages Award will be subject to a Form 1099.

[3] Rogue reviewed the daily clock-in and clock-out time for each of the 819 Eligible Settlement Class Members during the Recovery Period. Then Rogue took the amount of time each day the Eligible Settlement Class Member was clocked in outside of their scheduled shift, including their lunch, and added that time to their weekly hours total. Any additional time in excess of 40 hours was multiplied by their regular rate for that week. These calculations resulted in $938,407.90.

4

      f.   $412,486.20 plus the $226,867.41 equals $639,353.61.

8.   The Parties agree to a twenty-five percent (25%) cap on the damages Defendants pay the Settlement Class. The cap is based on 25%, or one-hundred-eighty (180) members, of the Settlement Notice Members returning a Notice to Join the Settlement. Meaning, the total cap on the Eligible Settlement Class is two-hundred-seventy-nine (279) individuals. The Parties believe that the 25% estimate, based upon several factors[4] including the rate of opt-ins from the first notice, is a fair and reasonable estimate.

      a.   If the Eligible Settlement Class Members' total damages exceed the total Eligible Settlement Class Member Fund, then each Eligible Settlement Class Member's Settlement Share will be reduced pro rata.

      b.   If the Eligible Settlement Class Members' total damages are less than the total Eligible Settlement Class Member Fund then the remainder will be distributed to the Eligible Settlement Class Members on a pro rata basis.

      c.   However, no Eligible Settlement Class Member shall receive more than 100% of their Back Wages and Liquidated Damages. Any amount of the Eligible Settlement Class Members' individual award that exceeds 100% of their back wages and liquidated damages will be returned to the Eligible Settlement Class Member Fund for pro rata distribution to the remaining Eligible Settlement Class Members.

      d.   If any money remains in the Eligible Settlement Class Member Fund following distribution to the Eligible Settlement Class Members, then the residual will remit to the Ohio Legal Assistance Foundation in *cy pres*.

9.   Service Awards. Each five (5) Named Plaintiff will receive $10,000.00 and the eight (8) Opt-in Plaintiffs, Eric Abbott, Tijuanna R. Justiniani, Loren Morgan, Tjuan Peoples, Yvette Faison, Rasheeda Williams, Tabrajah Beacham, and Edward Yancy who sat for their deposition will receive $3,500.00 for a total of $78,000.00 to be paid out as Service Awards.

---

[4] There are on fifty-five (55) new people getting the Settlement Notice, the 665 Original Non-Opt-In Plaintiffs are getting a second chance to participate. The first notice mailing resulted in a sixteen percent (16%) response rate. Because the second notice will advise the Original Non-Opt-In Plaintiffs that joining will result in their receiving money, the Parties increased the target response rate to twenty-five percent (25%). However, since the mailing will go back to employees who last worked at Rogue from November 18, 2016 through March 31, 2021, the Parties still have the same number of bad addresses from the first notice. This will reduce the return rate further.

10. Defendants will pay up to a maximum of $35,000.00 to the third-party administrator, ILYM Group, Inc., for administrative services, and any funds not used by ILYM Group, will revert to Rogue.

11. The three individual claims for Daniel Benton, Allen Bishop III, and Marcellus Murray are not resolved by this this Settlement and none of the claims and defenses asserted therein will be in any way affected by this Settlement.

12. Defendants agree to jointly approach the Court and support Plaintiffs' Counsels' application for $777,872.59 for attorney's fees and $50,884.42 in costs incurred to May 10, 2023. Plaintiffs' counsel submit to the Court that this amount is less than the lodestar fees of the law firms representing Plaintiffs, and that they will also do all future work necessary processing the settlement without further compensation.

13. The Parties agree to dismiss with prejudice Defendants William Henniger and Caity Matter Henniger from this case, after (a) the Parties receive Court approval of this Joint Motion for Approval of Settlement, (b) the full amount listed above is deposited to the third-party administrator and cleared, and (c) Plaintiffs' Counsel's attorneys' fees and costs are received from Defendants.

14. Unless the individual cases for Daniel Benton, Allen Bishop III, and Marcellus Murray are otherwise settled, Defendants William Henniger and Caity Matter Henniger will remain as Defendants on those cases.

## IV.    DISMISSING WITH PREJUDICE THE OHIO WAGE ACT CLAIMS BROUGHT UNDER FED. R. CIV. P. 23.

The Settlement Agreement seeks to dismiss with prejudice the Ohio Minimum Fair Wage Standards Act ("the Ohio Wage Act") the class action brought pursuant to Fed. R. Civ. P. 23(e). The Settlement Agreement is signed by the Named Parties who have appeared in the case, and it

seeks an order from this Court order after review of the settlement terms. See, Fed. R. Civ. P. 41(a)(1)(ii) and (a)(2).

The crucial language in Rule 23(e) is: "The claims, issues, or defenses of a certified class— or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Rule 23 was amended in 2003 to clarify that court approval is not required absent either certification or proposed certification for purposes of settlement. *See*, *e.g.*, *Derrick v. Glen Mills Sch.*, No. 19-CV-1541, 2023 WL 2058683, at \*2 (E.D. Pa. Feb. 17, 2023) ("The settlement does not purport to bind anyone other than the named plaintiffs and the CCIU. \* \* \* Rule 23(e) as now written simply does not apply to the proposed settlement here because no class has been certified and no settlement class is proposed."). Here, the Ohio Wage Act class has not yet been certified, and the Settlement Agreement states that the Named Plaintiffs voluntarily dismiss with prejudice the Ohio Wage Act class action. *See* **Ex. A** at ¶ III.2.

Even though court approval is not necessary for the dismissal of the Rule 23 Ohio Wage Act claims with prejudice, the FLSA claims of the opt-in plaintiffs will be dismissed with prejudice, and that process requires approval of the Court. *See, O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-CV-02378, 2020 WL 4493157 at \*8 (W.D. Tenn. Aug. 4, 2020) (first citing *Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544, 546 (6th Cir. 2006), then citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Therefore, while not needed, the dismissal of the Rule 23 Ohio Wage Act claims with prejudice is being reviewed by this Court.

The Settlement Agreement provides a "second chance" for the 665 Original Non-Opt-in Plaintiffs and an original notice to the 55 new Settlement Notice Members. More importantly, the 819 Eligible Settlement Class Members are the putative Ohio Wage Act Rule 23 class. Therefore,

despite dismissing the Rule 23 Ohio Wage Act claims with prejudice, the putative Ohio Wage Act Rule 23 class will get notice and an opportunity to join the settlement.

In what appears to be remnants of case law prior to the applicability of Rule 23(e)'s amendment, *see Ky. Tax Bill Servicing, Inc. v. City of Covington*, Civil Action No. 19-18-DLB-CJS, 2021 WL 5862559, at *1 (E.D. Ky. Aug. 30, 2021) (citing *Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 762 (6th Cir. 2005)), a court should be concerned about prejudice to putative class members from a voluntary dismissal. The biggest potential prejudice concerns the statute of limitations. *See, Casey v. Medcursor, Inc*., No. 1:21-CV-00711-DAD-SAB, 2021 WL 4751378, at *1–2 (E.D. Cal. Oct. 12, 2021). When the complaint was filed as a putative Fed. Civ. R. 23(e) class action, the Ohio Wage Act statute of limitations was tolled. *See American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 554 (1974). Consequently, the statute of limitations will resume running upon dismissal with prejudice for those Settlement Notice Members who do not return a timely Notice to Join the Settlement. Dismissal is, in that sense, tantamount to denial of class certification. *Cf. Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983) ("remains tolled for all members of the putative class until class certification is denied"). Once tolling stops, "unnamed class members [may] join the action individually or file individual claims if the class fails." *China Agritech, Inc. v. Resh*, 138 S.Ct. 1800, 1804 (2018).

The language of the Second Notice mitigates any prejudice from reliance on the class action being dismissed with prejudice. The Second Notice says:

### LEGAL EFFECT OF NOT JOINING THIS ACTION

If you choose not to join this action, you will not be bound by the Settlement Agreement's terms and may file your own cause of action. You will not be entitled to share any amounts paid to the Collective Members in this case. You will be free to file your own lawsuit, or to not file any lawsuit at all; however, the pendency of this action will not stop the running of the statute of limitations as to any claims you may have until you file your own lawsuit.

PLEASE BE ADVISED:  After the opportunity for you to opt into this lawsuit and Settlement expires, the Parties intend to seek dismissal of this lawsuit in its entirety in exchange for payment of a portion of the wages owed under the Fair Labor Standards Act (FLSA).  If you choose to pursue your own claim separately from this lawsuit, rather than to opt into this lawsuit, you need to calculate the time period within which your separate lawsuit must be filed.  That time period is known as the statute of limitations.  The plaintiffs had requested that the FLSA time period be extended for those who exercised their right to opt into this lawsuit.  The Court has permitted a limited extension.  You have three years before  March 21, 2021, or three years before the date your consent to opt in was filed, whichever date creates a longer window of recovery under the FLSA. You should consider the last date you were not paid and calculate from there.  Unless you start to pursue your own FLSA lawsuit within the time period, your FLSA claim would be deemed untimely and could not be pursued. To calculate the time period for you to pursue your own claim under the FLSA, therefore, you should consult with an attorney to determine how the statute of limitations may apply to you.

Under the Ohio Minimum Fair Wage Standards Act (the Ohio Wage Act), the statute of limitations period is two years from when the overtime was not paid.  Because the plaintiffs brought the Ohio Wage Act claim as a class action, though, a different calculation is done.  From the date this lawsuit was started your potential membership in a class action stopped the clock on your Ohio Wage Act time period.  The clock starts again once the class action is dismissed.   To calculate the time period for you to pursue your own claim under the Ohio Wage Act, therefore, you should consult with an attorney to determine how the statute of limitations may apply to you.

This language informs the Settlement Notice Member that not joining the settlement will permit them to file their own claim but that the statute of limitations for the Ohio Wage Act claims will potentially be dead by the time they file this claim.  This language will mitigate any prejudice to the Putative Ohio Wage Act Rule 23 Class members.

## V.  THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and where it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d at 1352-54 (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Graybill v. Petta Enters., LLC*, No. 2:17-CV-418, 2018 WL 4573289, at *4, *adopted* 2018 WL 4963569 (Oct. 15,

9

2018) (noting that "a district court may be satisfied that the parties are not … negotiating around FLSA requirements where there is a 'bona fide dispute under the FLSA,' citing *Kritzer v. Safelite Solutions, LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *5-8 (S.D. Ohio May 30, 2012)); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010) (recognizing that the courts ensure plaintiffs are not abandoning FLSA rights by determining a bona fide dispute exists); *Schneider v. Goodyear Tire & Rubber Co*., No. 5:13-CV-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014) (recognizing that the existence of a bona fide dispute serves as a guarantee the parties have not manipulated the process to avoid FLSA obligations).

The Court should thus perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indicium of fairness. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d at 1354 (11th Cir. 1982). If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement to promote the policy of encouraging settlement of litigation. *Id*.; *see also Hainey v. Parrott*, 617 F.Supp. 2d 668, 679 (S.D. Ohio 2007) (approving settlement upon finding it was reasonable and brought resolution to a matter contested for a number of years); *Swigart v. Fifth Third Bank*, No. 1:11-CV-00088, 2014 WL 12654902, at *1 (S.D. Ohio Feb. 19, 2014) ("The Court further finds that the settlement reflects a reasonable compromise over contested issues under the FLSA, including but not limited to whether Defendants properly classified Plaintiffs as exempt and Defendants' good faith defense."); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, Civil Action No. 06-299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008).

Based on the vigorously contested nature of this litigation over approximately three-and-a-half (3.5) years and the recovery achieved, this Settlement is a reasonable resolution of a *bona fide* dispute in contested litigation. The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation.

**A. The Proposed Settlement is the Product of Contested Litigation.**

The Settlement Agreement was reached only through hard-fought settlement negotiations. The Parties have fully analyzed the pertinent factual and legal issues in this case, as well as having assessed the strengths and weaknesses of the claims and defenses at issue. These facts are sufficient to establish a "contested" litigation. *See Simmons v. Mathis Tire & Auto Serv.*, No. 13-2875-STA-tmp, 2015 U.S. Dist. LEXIS 114008, at *1-2 (W.D. Tenn. Aug. 20, 2015) (approving a private settlement agreement that the parties negotiated through mediation after the start of litigation— and then submitted for the court's approval), ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes concerning a plaintiff's entitlement to compensation under the FLSA.").

**B. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue concerns the existence of a *bona fide* dispute between the Parties, and the second issue addresses the fairness and reasonableness of the proposed settlement. Both issues implicated by this second prong of the Court's settlement approval inquiry are also satisfied.

**1. A *Bona Fide* Dispute Between the Parties Existed Over Liability.**

Courts find there is a *bona fide* dispute where the parties disagree over legal issues pertinent to the FLSA claims of the plaintiffs. *See, e.g., Foster v. Residential Programs, Inc.,* No. 2:19-CV-2358, 2021 U.S. Dist. LEXIS 30963, at *8 (S.D. Ohio Feb. 18, 2021) (bona fide dispute where parties disagreed as to whether employees are entitled to overtime, whether the defendants' actions

were willful, and whether the defendants acted in good faith); *Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 U.S. Dist. LEXIS 179622, at *4 (S.D. Ohio Sept. 29, 2020) (same).

Had this matter not settled, multiple issues remained subject to continued litigation. Specifically, *bona fide* disputes exist as to: (1) whether Defendants failed to compensate Plaintiffs for all compensable time worked; (2) whether Defendants as a matter of law were required to compensate Plaintiffs for the time that they allegedly worked off-the-clock or worked pre- and post-shift; (3) whether each employee's "clocked in" time prior to shift was actually compensable "work" time, as opposed to unpaid personal time or tasks unrelated to job duties, (4) whether liquidated damages should be awarded; (5) whether a three-year limitations period should apply; and (6) whether this lawsuit should be decertified. Defendants explicitly continue to dispute the merits of Plaintiffs' claims as part of the Settlement.

Finally, Plaintiffs and Plaintiffs' Counsel believe that this Settlement is in the best interest of the Plaintiffs. *See* <u>Declaration of Robert E. DeRose, Esq.</u>, attached as **Exhibit B** ("**Ex. B**") at ¶25; <u>Declaration of John S. Marshall, Esq.</u>, attached as **Exhibit C** ("**Ex. C**") at ¶20. The proposed settlement, as based on the estimated number of new opt-in plaintiffs from the Eligible Settlement Class Members, is intended to compensate Plaintiffs and putative class members for one hundred percent (100%) of what they could have received in both their back wages *and* 100% of potential liquidated damages if they were successful at trial.[5] *See* **Ex. B** at ¶17; *see* **Ex. C** at ¶20; *see also*, **Ex. A.** at ¶ III. 3(a) and (b). The Parties disputed whether there were any violations of the FLSA and Ohio law. If the matter is not resolved by settlement, there remains a risk that the ultimate trier of fact reaches a defense verdict, in which Plaintiffs would receive nothing. Furthermore, the

---

[5] Although the parties believe that their estimate of 25% opt-ins from the second notice is a liberal estimate, there is still some chance that more than the estimated number of opt-in plaintiffs join the action, resulting in a reduced pro rata share of the settlement funds (See Section III 8 a – herein). In other words, ideally, all estimated new plus original opt-ins will receive 100% of their damages. However, there is a chance that less than 100% of damages will be allocated.

Parties recognize that while the putative class members' damages remain the same, both sides face significant risk due to extensive attorneys' fees anticipated with additional litigation. While Plaintiffs feel strongly about the veracity of their allegations, absent settlement, Defendants have denied and continue to deny Plaintiffs' allegations    vigorously during and after additional discovery. This process would have been time-consuming and expensive for all Parties. Moreover, it will be many months, if not years, before Plaintiffs receive any monetary relief absent the approval of the negotiated Settlement Agreement before the Court.

      **2.   The Proposed Settlement is Fair and Reasonable.**

      The settlement amount is reasonable considering the considerable risk that Plaintiffs faced. "The Sixth Circuit has identified seven factors that should aid a court in its determination of whether a class action settlement is fair, reasonable and adequate: 1) the risk of fraud or collusion; 2) the complexity, extent and likely duration of the litigation; 3) the amount of discovery engaged in by the parties; 4) the likelihood of success on the merits; 5) the opinions of class counsel and class representatives; 6) the reaction of absent class members; and 7) the public interest. *Combs v. TruGreen Ltd. P'ship*, No. 1:08-CV-489, 2010 WL 1163094, at *5 (S.D. Ohio Sept. 2, 2010) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *Kunkle v. Q-Mark, Inc.*, No. 3:13-CV-82, 2013 WL 6913250, at *1 (S.D. Ohio Dec. 30, 2013) (noting that courts apply the above seven factors when determining whether a proposed FLSA settlement is fair and reasonable.)  Other factors are considered in determining whether the settlement of FLSA claims is "fair and reasonable." *Id*. The court may choose to consider only certain factors that are relevant to the settlement at hand and may choose to weigh factors according to the demands of the case. *Id*. In certain cases, a court may consider each factor individually. *Id.* "More often, however, inquiry into one factor necessarily overlaps with inquiry into another." *Id*. (internal citations omitted).  Each of these factors favor settlement. Accordingly, the settlement proceeds and terms

are fair, reasonable, and adequate.

### 3. There is No Evidence of Fraud or Collusion.

Here, the Settlement was the product of arms' length negotiations between experienced wage and hour counsel. The Settlement was reached after the Parties engaged in formal discovery and after partaking in extensive settlement negotiations—specifically, three separate mediations. *See Dillworth*, 2010 WL 776933, at *6 (approving settlement that was reached after the parties engaged in "arms-length negotiation, following extensive investigation and discovery."); *Ford v. Carnegie Mgmt. Servs., Inc.*, Civil Action No. 2:16-CV-18, 2017 WL 4390294, at *2 (S.D. Ohio Oct. 3, 2017) ("The parties' divergent positions would have required judicial resolution had a settlement not been reached through many months of arms-length negotiation between competent counsel. Thus, the settlement is free from indicia of fraud and collusion.").

### 4. The Complexity, Expense and Likely Duration of the Litigation.

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendants' defenses. If the litigation had continued, the Parties would have faced obstacles and uncertainties, including the outcome of complex discovery disputes, a potential for summary judgment, and potentially a trial on the merits. *See*, *Dillworth*, 2010 WL 776933, at *6 (noting that "given the factual and legal complexity of the case, there is no guarantee that Plaintiff would prevail at trial. Here, the Plaintiffs are afforded the assumption that they were performing compensable work/tasks for *all* the time they were clocked in. This may not be proven at trial. In contrast, the Settlement Agreement assures that Plaintiff will receive substantial compensation for time spent in the disputed activities.").

Accordingly, the remaining duration of this case would be significant; yet, Plaintiffs' recovery of damages, if any, is far from certain. With the Parties' settlement, Plaintiffs will receive concrete (and significant) relief, while Defendants will avoid the continued expense of litigation

and the relative peace-of-mind guaranteed by Plaintiffs' release of claims.

### 5. Stage of Proceedings

Plaintiffs and Defendants engaged in extensive discovery and motion practice prior to settling this case, which has been vigorously litigated for approximately three-and-a-half (3.5) years. Payroll and timekeeping information were provided by Defendants, which allowed Plaintiffs' counsel to create their own damages analysis for Settlement Class Members. The damages analysis was time-consuming, and it served as the basis for negotiation and ultimately settling this matter. Additionally, the parties undertook dozens of depositions and fully understood the strengths and weaknesses of their cases.

Accordingly, the "parties were fully informed as to the strengths and weaknesses of their respective positions," *Neal v. Hallsons of Lebanon, Inc.*, No. 1:20-CV-006722022 U.S. Dist. LEXIS 42210, at *7 (S.D. Ohio Feb. 28, 2022), and this settlement "resulted from arms-length negotiations between experienced counsel after substantial investigation." *Swickheimer v. Best Courier, Inc.*, No. 2:19-CV-3706, 2021 U.S. Dist. LEXIS 242757, at *5 (S.D. Ohio Dec. 21, 2021).

As such, this factor supports approval of the proposed Settlement.

### 6. The Likelihood of Success on the Merits.

Plaintiffs alleged various types of overtime wage violations and alleged failure to pay wages in a timely manner pursuant to the FLSA and Ohio law. To summarize, Plaintiffs have alleged that they were not paid at one-and-a-half times their regular rate for all hours worked beyond forty (40) in a workweek as they often perform uncompensated pre- and post-shift integral and indispensable tasks. Given the evidence and testimony, Plaintiffs believe the probability of success is high on their alleged claims. Defendants completely disagree and vehemently deny these allegations.

Defendants asserted numerous factual and affirmative defenses through its pleadings. In part, Defendants disputed the hours worked, whether the work was performed, that such time was required to be compensated, or that such time had already been compensated. Defendants also raised numerous affirmative defenses in their Answer.

The Eligible Settlement Class Member Fund was calculated using of the average of 100% unpaid wages and 100% liquidated damages for all 819 Eligible Settlement Class Members. Because the Settlement Notice is predominantly being mailed as a "second chance" to the Original Non-Op-in Plaintiffs, there is a high probability that the Eligible Settlement Class Members will receive 100% of their unpaid wages and 100% liquidated damages. The settlement builds in a pro rata mechanism to distribute unclaimed Eligible Settlement Class Member Funds to Eligible Settlement Class Member to assist in reaching 100%. The cap on damages is based on a liberal estimate of the number of additional opt-ins after the second notice to the class, and in the opinion of counsel, will most likely result in less than the agreed 25% opt-in rate. This is the best result the Plaintiffs could obtain after a jury trial and the Court's review and imposition of liquidated damages. The fact that there is a high probability that Eligible Settlement Class Members could be made 100% whole[6] with 100% liquidated damages without the risk of trial, is the "most important factor" *See e.g., Does 1-2 v. Déja´ Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (the district court found that the direct benefits provided by the Settlement Agreement outweighed the value of the Dancers' claims) Further, Rogue's pay practices changed as of March 31, 2021. These two factors weigh heavily on the side of approving this settlement.

---

[6] It is important to note that Defendants still maintain that some of the time Plaintiffs were clocked in outside of their scheduled shift would not qualify as compensable. Therefore, Defendant maintains that some Eligible Settlement Class Members payments could exceed 100%.

**7. The Opinion of Plaintiffs and Plaintiffs' Counsel.**

Based on Plaintiffs' Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour lawsuits throughout the United States, Plaintiffs' Counsel believes that the Settlement constitutes a fair and reasonable result for all Parties. *See* **Ex. B** at ¶25; **Ex. C** at ¶ 20. This fact further supports approval of the Settlement. *See*, *Graybill*, 2018 WL 4573289, at *6 ("The Court gives deference to [counsel's] experienced opinion that the Settlement Agreement should be approved.") (*citing Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)); *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, the Plaintiffs approved the terms of the Settlement as evidenced by their signature on the Agreement. Considering the foregoing, the Court should approve the Parties' proposed Settlements of this Action.

The results in this matter provide an exceptional recovery for the Plaintiffs. Plaintiffs will potentially be compensated 100% percent for the alleged damages during the relevant time period. *See* **Ex. A**, at ¶ III. 3(a) and (a)(v). Further, this settlement protects the Putative Ohio Wage Act Rule 23 Class members despite dismissing the Ohio Wage Act Rule 23 Class claims with prejudice. The Settlement Notice Members include all the Putative Ohio Wage Act Rule 23 Class members and provides the 665 of those Putative Ohio Wage Act Rule 23 Class members a "second chance" to join this lawsuit when there is no risk of losing.

**8. The Reaction of Absent Class Members.**

In an "opt-in class" action, such as this one, "there are no 'absent class members.'" *Murton v. MeasureComp, LLC*, No. 1:07CV3127, 2009 U.S. Dist. LEXIS 144222, at *17 (N.D. Ohio Aug. 10, 2009). Only Plaintiffs and those who have or will affirmatively joined this litigation pursuant to 29 U.S.C. § 216(b) are covered by this Settlement. Each Settlement Class Member agreed or

will agree in joining this collective to be bound by the class representative(s) decisions made "on [their] behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit." *See, e.g.,* ECF No. 103-1 at PAGEID 1019. In this case, the Original Non-Opt-in Plaintiffs will get a second chance to participate in the settlement.

### 9. Public Interest in the Settlement.

Because this Settlement (1) resolves what would be further protracted litigation, (2) provides finality (and certainty) to the Parties; and (3) preserves judicial resources, it promotes the public interest. *See, Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) ("Given the uncertainties surrounding the possible trial in this matter, the certainty and finality that come with settlement also weigh in favor of a ruling approving the settlement. Such a ruling promotes the public interest in encouraging the settlement of litigation.").

### C. The Representative Plaintiffs' Service Payments and the Service Payments for Those Who Had Their Depositions Taken Should Be Approved.

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Osman v. Grube, Inc.*, No. 3:16-CV-00802, 2018 U.S. Dist. LEXIS 78222, at *4 (N.D. Ohio May 4, 2018).

Under the proposed Settlement, each Named Plaintiff is requesting a $10,000.00 service award for themselves and any Opt-in plaintiff who sat for their deposition is requesting $3,500.00 in recognition, respectively, for their leadership roles on behalf of the Settlement Collective Members and for the time and effort spent in pursuing this litigation. *See* **Ex. A** at ¶ III. 3(b). Named Plaintiffs contributed significantly to the lawsuit and, ultimately, the proposed Settlement. They were willing to initiate a lawsuit and include their name conspicuously on the caption of the case, and they assisted Plaintiffs' counsel diligently throughout the lawsuit. *See* **Ex. B** at ¶18; **Ex.**

**C** at ¶¶ 21-22.   They have been in constant communication with Plaintiffs' counsel throughout this litigation, and their assistance has been instrumental in pursuing this litigation. For example, several Named Plaintiffs attended each mediation, all prepared for and had their depositions taken while actively participating in the discovery process, and all assisted in providing information and documentation throughout the discovery process. This assistance was integral in the litigation of this case. *See* **Ex. C** at ¶18; **Ex. D** at ¶21. Further, the Opt-in Plaintiffs who sat for their depositions took time to prepare with Plaintiffs' counsel for their deposition, while often having to miss work to attend their depositions. *See* **Ex. C** at ¶19; **Ex. D** at ¶22. As such, Plaintiffs submit that the $10,000.00 service award for each Named Plaintiff and the $3,500.00 service award for each Opt-in Plaintiff who had their deposition taken are warranted for their assistance to the Collective. *See, Neal v. Hallston of Lebanon, Inc.*, No. 1:20-CV-00672, 2022 U.S. Dist. LEXIS 42610, at \*5-8 (approving $5,000.00 service award to named plaintiff); see also, *Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. LEXIS 11019, at \*16-17 (S.D. Ohio Jan. 18, 2019) (approving $10,000.00 service award to named plaintiff); and *Osman v. Grube, Inc*, No. 3:1-CV-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at \*5 (approving $7,500.00 service award to named plaintiff).

## VI.   PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES SHOULD BE APPROVED

Congress included a fee-shifting provision in the FLSA that mandates an award of reasonable attorneys' fees and litigation costs to a prevailing employee. *See* 29 U.S.C. § 216(b); *see also Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) ("The award of a reasonable fee to a prevailing plaintiff is therefore mandatory under the FLSA."). Federal courts have long recognized the profound importance of a plaintiffs' right to recover attorney's fees under the FLSA, particularly where the victims of FLSA violations are low-wage

workers whose individual damages may not be individually significant. The Sixth Circuit in *Fegley* explained the importance of the FLSA's statutory fee provision:

> The purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights. Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.

*Fegley v. Higgins*, 19 F.3d 1126, 1134-43 (6th Cir. 1994) (internal quotations and citations omitted) (*cert. denied*, 513 U.S. 875 (1994)). So integral are attorney's fees under the FLSA that the Sixth Circuit recently took the unusual step of reversing a district court's reduction of fees sought in an FLSA case and ordering judgment for the full amount of the fees sought. *See Rembert*, 986 F.3d at 618.

Due to their critical importance to federal policies and goals, FLSA fee awards often exceed the amount recovered by Plaintiffs in lost wages. *See Fegley*, 19 F.3d at 1134-35 (affirming award of $40,000 in fees on $7,680 in damages). In this case, while the attorney fees exceed the amount recovered by Eligible Settlement Class Members, are less than the attorney fees Plaintiffs' Counsel has incurred to date. As of this joint filing, Plaintiffs' Counsels' attorney fees are $856,221.00. *See* **Ex. B**. at ¶14 and **Ex. C**. at ¶¶17-18. Plaintiffs' Counsel anticipates incurring an additional $30,000.00 in the future during the approval and then the distribution process of this settlement. *See* **Ex. B** at ¶23; **Ex. C** at ¶26. Conservatively, Plaintiffs' Counsel's attorney fees will exceed $886,221.00. The requested $777,872.59 is an approximate ten percent (12%) reduction. *See* **Ex. B**. at ¶24. While the requested attorney fees exceeds the Eligible Settlement Class Member Fund they are not excessive and reflect the amount of work performed to achieve the exceptional result. *See Kritzer v. Safelite Sols., LLC*, at *29.

There are two basic measures for evaluating the fairness of an attorney's fees award under the FLSA, "work done and results achieved." *Rui He v. Rom*, 751 Fed.App'x, 664, 673 (6th Cir. 2018) (quoting *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). The "work done" measure is the "lodestar" method of attorney fee calculation and the "results achieved" measure is the "percentage of the fund" method of attorney fee calculation." *Gascho* at 279. The Sixth Circuit permits a court to choose one or the other method as the court, in its discretion, deems appropriate for the circumstances of a particular case so long as the court articulates its reasons. *See, Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). The lodestar method yields a fee that is presumptively sufficient to achieve the objective of attracting competent counsel but avoiding a windfall for the attorneys. *See Rembert* at *4 (quoting *Perdue v. Kenny A., ex rel. Winn*, 559 U.S. 542, 552 (2010)).

In approving the reasonableness of attorney's fees, the relevant factors typically include: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *See, Moulton v. U.S. Steel Corp.*, 581 F.3d at 352.

Plaintiffs' Counsel seeks an award of attorneys' fees of $777,872.59 and reimbursement for costs in the amount of $50,884.42. *See* **Ex. A** at ¶ III. 3(c). The Eligible Settlement Class Member Fund is $639,353.61.  Plaintiffs' Counsel's lodestar exceeds the Eligible Settlement Class Member Fund and the Service Awards ($78,000.00) by $90,518.98. The total settlement is $1,581,110.62.  Awarding Plaintiffs' Counsels' entire attorney fees and costs, $828,757.01, the lodestar award would be approximately fifty-one percent (51%) of the total settlement. While this may seem like a windfall, as discussed below the efforts expended by Plaintiffs' Counsel and the

exceptional results achieved warrant granting Plaintiffs' Counsels' request. *See Kritzer v. Safelite Sols., LLC*, 2012 Dist. LEXIS 74994, at \*29 (Granting the same Plaintiffs' Counsel 52% of the settlement based on the amount of work performed and the exceptional result achieved for the class.

### A. Value of the Benefit Rendered to the Eligible Settlement Class Members.

Under the proposed Settlement, the Eligible Settlement Collective Members are entitled to a substantial recovery on their claims for each week they worked in the Collection Period. Each Settlement Collective Member will receive an average gross settlement payment of approximately $2,291.59. Plaintiff's counsel believes that this constitutes an exceptional result. *See Shanahan v. KeyBank*, No. 1:19-CV-2477, 2021 Dist. LEXIS 50516, at \*14 (N.D. Ohio Mar. 16, 2021) (approving lodestar multiplier of 3.75 where counsel recovered "significant benefit" of 35% of unpaid wages); *see also Kritzer v. Safelite Sols., LLC* at \*29.

Eligible Settlement Class Members will receive 100% of their unpaid wages and 100% liquidated damages, subject to the cap on damages. This is the best result the Plaintiffs could obtain, considering the stage of litigation and discovery. Had settlement not been reached, further discovery would have been required to determine whether the putative class/collective members' activities between clock in/out and shift start/end consisted of actual compensable time. Further, this action has resulted in extensive discovery into Rogue's timekeeping and pay practices, which resulted in modifications to Rogue's policies and practices as of March 31, 2021. These two factors demonstrate the value of Plaintiffs' Counsels' benefit to the class.

### B. Value of the Services on an Hourly Basis.

Plaintiffs' counsel expended 2,061.70 hours in connection with the prosecution of Eligible Settlement Class Members' claims. *See* **Ex. B**. at ¶21 (1,260.20 hours); **Ex. C**. at ¶¶17-18 (801.50 hours). Accordingly, Plaintiffs' Counsels' current lodestar is $856,221.00. *See* **Ex. B**. at ¶14

($518,192.50); **Ex. C**. at ¶17-18 ($338,028.50). Plaintiffs' requested fee award of $777,872.59 is

$108,348.41 less than their actual lodestar attributable to prosecution of this case. *See* **Ex. B**. at

¶24. Thus, this factor favors approval. *See Dewald v. Time Warner Cable Inc*., Nos. 16-CV-1129,

17-CV-00631, 2021 U.S. Dist. LEXIS 32459, *18 (S.D. Ohio Feb. 16, 2021) (factor favored

approval where Plaintiffs Counsel's lodestar was more than the amount of fee requested).

    **C.  Whether the Services Were Undertaken on a Contingent Fee Basis**.

    Plaintiffs' Counsel took this case on a pure contingency basis, which favors approving the

attorney's fees sought. *See* **Ex. B**.  at ¶16; **Ex. C** at ¶19; *See, Hebert v. Chesapeake Operating,*

*Inc*., No. 2:17-CV-852, 2019 U.S. Dist. LEXIS 160792, *5 (S.D. Ohio Sep. 20, 2019) ("counsel

absorbed the risk of an unsuccessful outcome and no fee of any kind. This favors granting the

attorney's fees award."). The representation agreement between Plaintiffs and their counsel

provides for a 33% fee (plus costs) in the event Plaintiffs are successful on their claims and for

some reason Plaintiffs' counsel was unable to petition for the payment of fees from Defendants.

*See* **Ex. B.** at ¶16; **Ex. C** at ¶19. Importantly, the representation agreement further provides that

Plaintiffs bore no risk of loss if unsuccessful. Plaintiffs' Counsel was solely responsible for all

costs and expenses in this matter with no certainty of recovery. Meaning, if Named Plaintiffs lost,

Plaintiffs' Counsel would not only be unpaid for nearly four years of work, but they would not be

compensated for the $50,884.42 they spent in costs.  Thus, the contingent-fee representation

agreement provides further support for granting the Plaintiffs' Counsel request for attorney fees

and costs.

    **D.  Society's Stake in Rewarding Attorneys Who Produce Such Benefits to Maintain**
        **an Incentive to Others.**

    This factor also strongly favors approval of the requested attorney's fees based on the

superior result that counsel achieved for Plaintiffs. On their own, the individual plaintiffs would

not have been able to effectively prosecute their cases given Rogue's vigorous and unrelenting

defense. As mentioned, Plaintiffs' counsel invested 2,061.70 hours of time and $50,884.42 in costs to prosecute this case, this is more than what any individual plaintiff could do on their own. *See* **Ex. B**. at ¶¶ 20-21 and **Ex. C**. at ¶¶17-18,23; *supra*. As stated above, the Settlement Agreement provides the Eligible Settlement Class Members with the potential to receive 100% of their unpaid wages and 100% liquidated damages. Accordingly, this factor favors approval. *See Dewald v. Time Warner Cable Inc*., 2021 U.S. Dist. LEXIS 32459 at *17 (this factor favors approval where "counsel was integral in helping Plaintiffs recover damages for unpaid wages."); *see also Kritzer v. Safelite Sols., LLC*, at *29 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.").

    **E. The Complexity of the Litigation**.

    Wage-and-hour collective action cases are "inherently complex and time-consuming." *Neal v. Hallston of Leb., Inc*, 2022 U.S. Dist. LEXIS 42210, at *6; *See also Foster*, 2021 U.S. Dist. LEXIS 30963, at *9 (wage and hour collective actions are "by their very nature, complicated and time-consuming."), *Dewald*, 2021 U.S. Dist. LEXIS 32459, *18 (factor favors approval where claims and defenses continue to be litigated).

    This case was extremely complex. It was filed on November 18, 2019 and was vigorously litigated for nearly four years. Plaintiffs' Counsel served written discovery which included eight separate sets of Production Requests. Plaintiffs' Counsel responded to written discovery for each of the Named Plaintiffs. The parties conducted twenty-four (24) depositions, one that was a over four (4) hour walking videoed 30(b)(6) of Rogue's 5th Avenue facility. Over a dozen motions were fully briefed. Numerous court appearances. Rogue produced over 84 gigabytes of documents that Plaintiffs' Counsel reviewed, cataloged, and digested. Plaintiffs' Counsel conducted a Notice mailing to 720 putative collective class members. Plaintiffs' Counsel reviewed the daily clock-in/clock-out entries for twenty-four (24) Plaintiffs and Opt-ins for each day they worked from

November 18, 2016 through the last date they worked. Finally, Rogue's defense was vigorous, unrelenting, and sophisticated. Absent settlement, this litigation would only be prolonged because there would be more discovery and motion practice and a several week jury trial. This factor favors the requested fee and cost award.

### F. The Professional Skill and Standing of Counsel Involved on Both Sides

Experienced counsel, specialized in wage and hour litigation, represented both Plaintiffs and Defendants. Plaintiffs' counsel has represented hundreds of thousands of employees throughout the United States in collective and class action wage and hour litigation. *See* **Ex. B** at ¶3 and **Ex. C** at ¶¶5-6. As such, Plaintiffs' counsel is intimately familiar with the wage and hour issues that were asserted in this lawsuit. The skill and experience of Plaintiffs' counsel is further addressed in their attached Declarations. *See* **Ex. B** at ¶¶ 3-7 and **Ex. C** at ¶¶5-11.

### G. Litigation Costs

"Reimbursement of costs that are reasonable and necessary to the litigation and resolution of a case warrant approval by this Court." *Foster*, 2021 U.S. Dist. LEXIS 30963, at *5. Plaintiffs' counsel seeks a total of $50,884.42 in expenses that were reasonable in amount and necessary for the successful prosecution and settlement of this action. *See* **Ex. B** at ¶20 ($37,302.83 in expenses); **Ex. C** at ¶23 ($13,214.39 in expenses).

### VII. CONCLUSION

The Parties reached this Settlement as the result of contested litigation, and it resolves a *bona fide* dispute. The Parties engaged in lengthy negotiations at mediation, analyzed all pertinent information, and resolved the issues between them. The Settlement is eminently fair, reasonable, and adequate, and provides Plaintiffs with significant monetary relief in a contested matter. Finally, the Settlement fulfills the relevant criteria within this Circuit's seven-factor test. For these reasons, the Court should approve the Parties' Agreement.

Dated: May 19, 2023

Respectfully submitted,

/s/Melissa Z. Kelly
Melissa Z. Kelly (0077441)
**TUCKER ELLIS, LLP**
950 Main Avenue
Suite 1100
Cleveland, OH 44113
Telephone: (216) 592-5000
Facsimile: (216) 592-5009
melissa.kelly@tuckerellis.com

/s/Drew H. Campbell
Michael A. Roberts (0047129)
Drew H. Campbell (0047197)
Alexandra M. Berry (0098176)
**BRICKER GRAYDON, LLP**
100 South Third Street
Columbus, Ohio 43215
Telephone: (614) 227-2319
Facsimile: (614) 227-2390
mroberts@brickerygraydon.com
dcampbell@brickergraydon.com
aberry@brickergraydon.com

*Attorneys for Defendants*

/s/ Robert E. DeRose
Robert E. DeRose (0055214)
Jacob A. Mikalov (0102121)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com
jmikalov@barkanmeizlish.com

/s/John S. Marshall
John S. Marshall (0015160)
Helen M. Robinson (0097070)
Madeline J. Rettig (0098816)
**MARSHALL, FORMAN AND SCHLEIN, LLC**
250 Civic Center Drive, Suite 480
Columbus, Ohio 43215
Telephone: (614) 463-9790
Facsimile: (614) 744-2300
jmarshall@marshallforman.com
hrobinson@marshallforman.com
mrettig@marshallforman.com

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on May 19, 2023, a copy of the foregoing document has been served on counsel for all parties through the Court's ECF system.

/s/ Robert E. DeRose
Robert E. DeRose
*Counsel for Plaintiff*