**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**SCOTT LEE BRAUN**, *et al.*,

             **Plaintiff,**

    **v.**                          **Civil Action 2:19-cv-05050**
                                      **Magistrate Judge Kimberly A. Jolson**

**COULTER VENTURES, LLC**
**d/b/a ROGUE FITNESS**, *et al.*,

             **Defendants.**

---

**ALLEN D. BISHOP**, *et al.*,

             **Plaintiff,**

    **v.**                          **Civil Action 2:20-cv-03052**
                                      **Magistrate Judge Kimberly A. Jolson**

**COULTER VENTURES, LLC**
**d/b/a ROGUE FITNESS**, *et al.*,

             **Defendants.**

## <u>ORDER</u>

    This matter is before the Court on the parties' Joint Motion for Approval of FLSA Settlement. (Doc. 229). Named Plaintiffs Scott Lee Braun, Robert E. Hessler, Allen D. Bishop III, Marcellus Murray, and Larry Benn, on behalf of themselves and all other similarly situated individuals ("Plaintiffs"), and Defendants Coulter Ventures LLC, dba Rogue Fitness, William "Bill" Henniger, and Caity Matter Henniger ("Defendants") have moved the Court to approve, as fair and reasonable, a Collective Action Settlement Agreement and Release (the "Settlement") between Plaintiffs and Defendants and to dismiss the FLSA claims of the opt-in plaintiffs pursuant to Fed. R. Civ. P. 41(a)(1)(ii) and (a)(2). (*Id.*).

Having reviewed the settlement, as well as the parties' Motion for Approval of FLSA Settlement (Doc. 229), the Declarations of Robert E. DeRose and John S. Marshall appended thereto, and the pleadings and papers on file in this Action, the parties' request that the Court issue an Order approving the settlement as fair and reasonable, and that this case be stipulated as dismissed with prejudice, is **GRANTED** as follows:

## The Settlement Is Approved

1. The Court approves and incorporates by reference all of the definitions contained in the Joint Motion for Settlement Approval. The Court approves $639,353.61 collective action settlement and orders that it be implemented according to the Settlement's terms and conditions.

2. A district court should approve a Fair Labor Standards Act ("FLSA") collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352–54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Graybill v. Petta Enters., LLC*, No. 2:17-CV-418, 2018 WL 4573289, at *4, adopted 2018 WL 4963569 (Oct. 15, 2018) (noting that "a district court may be satisfied that the parties are not … negotiating around FLSA requirements where there is a 'bona fide dispute under the FLSA,' citing *Kritzer v. Safelite Solutions, LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *5–8 (S.D. Ohio May 30, 2012)); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010) (recognizing that the courts ensure plaintiffs are not abandoning FLSA rights by determining a bona fide dispute exists); *Schneider v. Goodyear Tire & Rubber Co.*, No. 5:13-CV2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014) (recognizing that the

existence of a bona fide dispute serves as a guarantee the parties have not manipulated the process to avoid FLSA obligations).

3. Here, the settlement meets the standard for approval. First, the settlement is the product of contested litigation. It was only reached after hard-fought settlement negotiations, including three mediations. The Parties have fully analyzed the pertinent factual and legal issues in this case, as well as having assessed the strengths and weaknesses of the claims and defenses at issue. As such, the "contested litigation" prong is satisfied.

4. The second prong of the Court's settlement approval inquiry is also satisfied. The settlement is a fair and reasonable resolution of a bona fide dispute between the parties.

5. Courts find there is a bona fide dispute where the parties disagree over legal issues pertinent to the FLSA claims of the plaintiffs. *See, e.g., Foster v. Residential Programs, Inc.*, No. 2:19-CV2358, 2021 U.S. Dist. LEXIS 30963, at *8 (S.D. Ohio Feb. 18, 2021) (bona fide dispute where parties disagreed as to whether employees are entitled to overtime, whether the defendants' actions were willful, and whether the defendants acted in good faith); *Smith v. TradeGlobal, LLC*, No. 1:19-CV-192, 2020 U.S. Dist. LEXIS 179622, at *4 (S.D. Ohio Sept. 29, 2020).

6. The Court also concludes that a *bona fide* dispute existed between the parties. The parties disagree as to: (1) whether Defendants failed to compensate Plaintiffs for all compensable time worked; (2) whether Defendants as a matter of law were required to compensate Plaintiffs for the time that they allegedly worked off-the-clock or worked pre- and post-shift; (3) whether each employee's "clocked in" time prior to shift was actually compensable "work" time, as opposed to unpaid personal time or tasks unrelated to job

duties, (4) whether liquidated damages should be awarded; (5) whether a three-year limitations period should apply; and (6) whether this lawsuit should be decertified.

7. And this case has been vigorously litigated for over three years. "The duration and complexity of the litigation undermines any notion that the settlement is a product of collusion, or 'that the one entity with a bird's eye view of the proceedings—the district court judge—somehow missed the signs that the parties were merely engaged in pretense and posturing.'" *Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *1 (N.D. Ohio May 4, 2018) (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009)).

8. Lastly, the Court finds that the settlement is fair and reasonable. "The Sixth Circuit has identified seven factors that should aid a court in its determination of whether a class action settlement is fair, reasonable and adequate: 1) the risk of fraud or collusion; 2) the complexity, extent and likely duration of the litigation; 3) the amount of discovery engaged in by the parties; 4) the likelihood of success on the merits; 5) the opinions of class counsel and class representatives; 6) the reaction of absent class members; and 7) the public interest." *Combs v. TruGreen Ltd. P'ship*, No. 1:08-CV-489, 2010 WL 1163094, at *5 (S.D. Ohio Sept. 2, 2010) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *Kunkle v. Q-Mark, Inc.*, No. 3:13-CV-82, 2013 WL 6913250, at *1 (S.D. Ohio Dec. 30, 2013) (noting that courts apply the above seven factors when determining whether a proposed FLSA settlement is fair and reasonable.)

9. Here, there is no evidence of fraud or collusion. The Settlement was the product of arm's length negotiations between experienced wage and hour counsel. The settlement was reached after the parties engaged in formal discovery and after partaking in extensive

settlement negotiations, including three separate mediations. *Ford v. Carnegie Mgmt. Servs., Inc.*, Civil Action No. 2:16-CV-18, 2017 WL 4390294, at *2 (S.D. Ohio Oct. 3, 2017) ("The parties' divergent positions would have required judicial resolution had a settlement not been reached through many months of arms-length negotiation between competent counsel. Thus, the settlement is free from indicia of fraud and collusion.").

10. Also, the "parties were fully informed as to the strengths and weaknesses of their respective positions," *Neal v. Hallsons of Lebanon, Inc.*, No. 1:20-CV-006722022 U.S. Dist. LEXIS 42210, at *7 (S.D. Ohio Feb. 28, 2022), and this settlement "resulted from arms-length negotiations between experienced counsel after substantial investigation." *Swickheimer v. Best Courier, Inc.*, No. 2:19-CV-3706, 2021 U.S. Dist. LEXIS 242757, at *5 (S.D. Ohio Dec. 21, 2021). The parties engaged in extensive discovery and motions practice prior to settling this case. Payroll and timekeeping information were provided by Defendants, which allowed Plaintiffs' counsel to create their own damages analysis for Settlement Class Members. The damages analysis was time-consuming, and it served as the basis for negotiation and ultimately settling this matter. Additionally, the parties undertook dozens of depositions and fully understood the strengths and weaknesses of their cases. Accordingly, the complexity, extent and likely duration of the litigation and the amount of discovery support approval of the settlement.

11. Lastly, the fact that there is a high probability that Eligible Collective Action Members could be made 100% whole with 100% liquidated damages without the risk of trial, is the "most important factor[,]" weighing in favor of approving the settlement. *See e.g., Does 1-2 v. Déja´ Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (the district court found that the direct benefits provided by the settlement outweighed the value of the Dancers' claims).

**The Service Awards Are Approved**

12. "Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Osman*, No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *4.

13. Here, service awards are warranted for the Named Plaintiffs and Opt-in Plaintiffs who had their deposition taken. First, the Named Plaintiffs provided the factual basis for the lawsuit, have been in constant communication with Plaintiffs' counsel throughout the litigation, attended mediations, prepared for and had their depositions taken while actively participating in the discovery process, and assisted in providing information and documentation throughout the discovery process.

14. Likewise, the Opt-in Plaintiffs who sat for their depositions took time to prepare with Plaintiffs' counsel for their depositions, while often having to miss work to attend their depositions.

15. Based on the foregoing, a Service Award of Ten Thousand Dollars ($10,000.00) is approved for each Named Plaintiff, Scott L. Braun, Robert E. Hessler, Alen D. Bishop, Marcellus Murray, and Larry Benn. A Service Award of Three Thousand Five Hundred Dollars ($3,500.00) is also approved for the Opt-in Plaintiffs who had their depositions taken. The Court orders that such payments be made in the manner, and upon the terms and conditions, set forth in the Settlement and Motion for Approval of FLSA Settlement.

**Fees and Costs of the Plaintiffs' Attorneys Are Approved**

16. Plaintiffs' Counsel seeks $777,872.59 as their attorney's fees. There are two basic measures for evaluating the fairness of an attorney's fees award under the FLSA, "work

6

done and results achieved." *Rui He v. Rom*, 751 F. App'x, 664, 673 (6th Cir. 2018) (quoting *Gascho v. Global Fitness Holdings*, LLC, 822 F.3d 269, 279 (6th Cir. 2016)). The "work done" measure is the "lodestar" method of attorney fee calculation and the "results achieved" measure is the "percentage of the fund" method of attorney fee calculation. *Gascho*, 822 F. 3d at 279. The Sixth Circuit permits a court to select the appropriate method in its discretion, so long as the court articulates its reasons. *See Moulton*, 581 F.3d at 352. In approving the reasonableness of attorney's fees, the relevant factors typically include: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Id.*

17. Here, the factors weigh in favor of approving the proposed attorneys' fees. Plaintiffs' Counsel seek an award of attorneys' fees of $777,872.59, a 12% reduction in fees incurred throughout the litigation, and reimbursement for costs in the amount of $50,884.42.

18. First, Plaintiffs' Counsel has been exceedingly valuable to the Collective. Eligible Settlement Collective Action members will receive 100% of their unpaid wages and 100% liquidated damages, subject to the cap on damages. This is an exceptional result. *See Shanahan v. KeyBank*, No. 1:19-CV-2477, 2021 Dist. LEXIS 50516, at *14 (N.D. Ohio Mar. 16, 2021) (approving lodestar multiplier of 3.75 where counsel recovered "significant benefit" of 35% of unpaid wages).

19. Plaintiffs' Counsel also propose a fee award less than their actual lodestar for this case. They expended 2,061.70 hours in this matter, making their current lodestar $856,221.00. In light of this, their proposed award of $777,972.59 is reasonable.

20. There is a public interest in awarding fees to plaintiffs' attorneys to encourage them to take wage cases. *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011) ("[t]here is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases.").

21. The last three factors also weigh in favor of approving the proposed fees. No services were undertaken on a contingent-fee basis with no guarantee that they would be paid anything for their work and this three-and-a-half-year-old case was very contested and complex. And, Plaintiffs' Counsel has immense skill in litigating wage and hour claims.

22. Accordingly, Plaintiff's Counsel's proposed fees of $777,872.59 are reasonable. Plaintiffs' Counsel's request for reimbursement of $50,884.42 in actual out-of-pocket expenses incurred in prosecuting this case is also granted. The Court finds these costs to be reasonably incurred.

23. The Court orders that such payments be made in the manner, and upon the terms and conditions set forth in the Settlement and Motion for Approval of FLSA Settlement.

**Settlement Administrator's Fees**

24. The Court also approves the appointment of ILYM Group, Inc. to administer the settlement and approves $35,000.00 for its fees in administering the Settlement.

**Dismissal and Post-Dismissal Procedure**

25. The three individual claims for Daniel Benton, Allen Bishop III, and Marcellus Murray are not resolved by this Settlement and none of the claims and defenses asserted therein will be in any way affected by this Settlement.  The Court shall retain jurisdiction over these claims.

26. With respect to all remaining claims, the parties shall dismiss with prejudice Defendants Coulter Ventures LLC, dba Rogue Fitness; William Henniger; and Caity Matter Henniger from this case, after the full amount listed above is deposited to the third-party administrator and cleared and Plaintiffs' Counsel's attorneys' fees and costs are received from Defendants.

27. The Court retains jurisdiction over this Action for the purpose of enforcing the Settlement. IT IS SO ORDERED.


Date:   June 9, 2023                              /s/ Kimberly A. Jolson
                                                  KIMBERLY A. JOLSON
                                                  UNITED STATES MAGISTRATE JUDGE